1 | Dan Stormer, Esq. [S.B. #101967]
Virginia Keeny, Esq. [S.B. # 139568]
2 | HADSELL & STORMER, INC.
128 North Fair Oaks Avenue, Suite 204
3 | Pasadena, CA 91103-3645
Telephone: (626) 585-9600
4 | Facsimile: (626) 577-7079

5 | Randy Renick, Esq. [S.B. #179652]
Joshua Piovia-Scott, Esq. [S.B. #222364]
6 | THE LAW OFFICES OF RANDY RENICK
128 N. Fair Oaks Ave, Suite 204
7 | Pasadena, California 91103
Telephone (626) 585-9608
8 | Facsimile (626) 577-7079

9 | Attorneys for Plaintiff
JEFF BARDZIK
10

11

12        SUPERIOR COURT OF THE STATE OF CALIFORNIA

13               FOR THE COUNTY OF LOS ANGELES

14 | JEFF BARDZIK                  ) Case No.: SACV07_0141JVS (RnBx)
                                  )
15 |            Plaintiff,        ) (Honorable )
                                  )
16 |       vs.                    ) **COMPLAINT FOR DAMAGES**
                                  )
17 | COUNTY OF ORANGE COUNTY,      ) 1.   **VIOLATION OF 42 U.S.C.**
    ORANGE COUNTY SHERIFF'S       )      **§1983 (FREE SPEECH)**
18 | DEPARTMENT, MICHAEL           )
    CARONA, Does 1-10             ) 2.   **VIOLATION OF 42 U.S.C.**
19 |                              )      **§1983 (DUE PROCESS)**
            Defendants.          )
20 |                              ) 3.   **VIOLATION OF 42 U.S.C.**
                                  )      **§1983 (MONELL CLAIM -**
21 |                              )      **FREE SPEECH)**
                                  )
22 | _____      ) 4.   **VIOLATION OF 42 U.S.C.**
                                  )      **§1983 (MONELL CLAIM -**
23 |                              )      **DUE PROCESS)**
                                  )
24 |                              )      **REQUEST FOR JURY TRIAL**
                                  )
25 |                              ) Complaint Filed:
26
27                                          1
28
    **COMPLAINT FOR DAMAGES**

```
2/6/2007 10:19:23 AM  Receipt #: 92869
        Cashier : ABELLAMY [LA 1-1]
Paid by: L/O OF RANDY RENICK
8:CV07-00151
2007-086900        5 - Civil Filing Fee(1)
Amount :                        $60.00
8:CV07-00151
2007-510000       11 - Special Fund F/F(1)
Amount :                       $190.00
8:CV07-00151
2007-086400        Filing Fee - Special(1)
Amount :                       $100.00
Check Payment : 1668 /          350.00
```

# I. **INTRODUCTION**

Plaintiff Jeff Bardzik brings this action against Defendants for: general, compensatory, injunctive, punitive and statutory damages; costs; attorneys' fees; and other appropriate and just relief resulting from Defendants' unlawful and tortious conduct, and as grounds therefore alleges:

## **PARTIES**

1.    Plaintiff Jeff Bardzik is an individual who at all times relevant herein has resided in the County of Orange, State of California.

2.    Defendant County of Orange conducts business within the County of Orange, State of California

3.    Defendant Orange County Sheriff's Department (hereafter "Sheriff's Department") conducts business within the County of Orange, State of California.

4.    Defendant Michael Carona (hereafter "Carona") is an individual who at all times
relevant herein has worked within the County of Orange, State of California.

## **FACTUAL ALLEGATIONS**

5.    Jeff Bardzik has been a sworn member of the Orange County Sheriff's Department for 22 years, since graduating as Class President of his Academy class in 1984. After receiving a medal of courage and working as the Department Safety and Tactics Instructor and in the Gang Enforcement Team as a Deputy, he was promoted in 1994 to Sergeant.  As a Sergeant, he was twice selected to serve as an Academy Tactical Sergeant where he was responsible for the development and training of police recruits.  In April 2003, Bardzik was promoted to Lieutenant and was assigned as the Orange County Harbor Court Operations Facility Commander.

6.    In 1998, Michael Carona was elected Orange County Sheriff.  Almost immediately after the election, Carona appointed 86 political allies, campaign

2

1  contributors, friends and relatives as Orange County Sheriff Reserves.  The
2  political appointees were given badges, authorized to make arrests and in most
3  cases allowed to carry guns and/or concealed weapons.  Many of the Reserves
4  Carona appointed did not have the background or training required for the
5  position.

6      7.    On July 1, 1999, shortly after the Reserve appointments, state
7  legislation went into effect significantly increasing the training required to become
8  a Reserve and as a result, California's Commission on Peace Officer Standards
9  and Training (hereafter "POST") refused to recognize Carona's 86 Reserve
10  appointees as Certified Peace Officers, a certification required to make arrests and
11  carry guns.

12      8.    As a result of the lack of background investigation and training of the
13  appointees, there was a wealth of problems with the Reserves.  Some of Carona's
14  appointees lied about their criminal and drug history and their lack of training.
15  Others abused their authority using their guns and badges to intimidate civilians.

16      9.    In November 2003, Carona asked Bardzik to take command of the
17  Reserve Division, clean it up and bring it back to respectability, telling Bardzik he
18  was selected because of his reputation for making ethical decisions.  Carona told
19  Bardzik to "get rid of the dead wood," assured him there were "no sacred cows,"
20  told him to make sure it is not a "badge and gun club" and to "run it like every
21  other division."  From November 2003, through June 2004, Bardzik and Captain
22  Tom Twellman conducted an Audit of the entire Reserve Division, reported illegal
23  past practices and recommended numerous changes, including a written
24  recommendation that non-POST qualified Reserves not be allowed to serve as full
25  fledged Reserves.  The Audit resulted in a lengthy and detailed report.

26      10.    Bardzik received a May 3, 2004 letter of commendation for his work
27  on the Audit from Captain Twellman thanking him for his "hard work,"

28

3

**COMPLAINT FOR DAMAGES**

1   "dedication" and "commitment to the success of this project."  Moreover, Carona's

2   January 1, 2005 "state of the department" memo to all Orange County Sheriff's

3   Department praised Bardzik's decentralization of the Reserves as one of the

4   "highlights of the year."

5       11.   Bardzik reported to the Sheriff's Department that many of Carona's

6   appointees continued to lack POST certification, yet continued to carry guns and

7   badges.  In October 2004, Bardzik submitted a written recommendation to Carona

8   that the Reserves he appointed no longer serve as official Reserves and that their

9   status be changed to PSRs, non-sworn volunteers.  Shortly thereafter, Bardzik

10  advised Carona that California Penal Code §538d applied to the Sheriff's actions,

11  which makes it a misdemeanor to issue a badge to a non-sworn member "which so

12  resembles the authorized badge of a police officer . . . as would deceive an

13  ordinary, reasonable person."  Bardzik informed Carona that County Counsel had

14  come to the same conclusion and that he refused to participate in any future

15  issuing of inappropriate law enforcement badges to the PSRs.  Carona told

16  Bardzik, "look me in the eye when I tell you this Lieutenant,  I don't give a shit

17  about §538d and I don't give a shit about County Counsel.  I'm going to change

18  the law."

19      12.   In May 2005, Reserves were asked to turn in their badges and IDs if

20  they had not complied with the Department requirements, including Carona's

21  friends, supporters and contributors.  Some of these individuals were upset and

22  advised Carona as much, including writing letters to both Carona and Bardzik

23  pointing out they were financial supporters of Carona and complaining about the

24  treatment they were receiving.  On May 25, 2005, Bardzik reported to his

25  supervisor that he had been approached by a Captain who requested, on behalf of

26  Carona, that Bardzik promote three Reserves in violation of the Reserve Division

27  promotion protocol because these Reserves were important supporters of Carona.

28

4

1    This Reserve Division promotional protocol had been implemented by Bardzik
2    after he became Reserve Division Commander to replace the system of favoritism
3    that was in use before.

4           13.    On May 15, 2005, Captain Murray of the Orange County Sheriff's
5    Department called Bardzik and informed him that she was going to mail Bardzik a
6    Carona campaign contribution envelope and that he should mail it back with $100
7    so that he could be included on a list of Carona's Department supporters to be
8    published in the Orange County Register.  Captain Murray informed Bardzik that
9    she was calling all Captains and Lieutenants in the Department to do the same.

10          14.    Bardzik felt pressured by the call from one of his commanding
11   officers demanding a campaign contribution to Carona, and on May 25, 2005,
12   Bardzik reported to his supervisor at the time, Assistant Sheriff Pete Gannon, that
13   Murray was his ranking superior and that "her method of questioning me
14   regarding who I will financially support in an election over one year away is
15   unseemly.  Her insistence and pressure to decide now or otherwise be excluded
16   from a published list is coercive and suggests one is disloyal or will be discounted
17   if they choose to remain politically neutral."  He pointed out that although Murray
18   told him that Carona did not know that she was doing this that it could be picked
19   up by the media and "perceived as coercion."  Over the next couple months,
20   throughout May and June of 2005, various friends and supporters of Carona
21   advised Bardzik that he needed to publicly support Carona for reelection.

22          15.    In September 2005, Bardzik was asked to look into the politically
23   sensitive issue of Carona's legal restriction against soliciting campaign
24   contributions from individuals serving as Orange County Sheriff Reserves.  On
25   September 7, 2005, PSR leadership President Jim Palmer, another close political
26   ally of Carona, asked Bardzik whether Reserves are considered "employees" of the
27   Orange County Sheriff's Department for purposes of California Government Code

28                                           5

1  §3205. Section 3205 criminalizes solicitations of political contributions by a
2  candidate for elective office of a local agency from employees of that agency.
3  Palmer asked Bardzik if he could "get an educated opinion" on whether Reserves
4  were considered employees under that statute. Bardzik immediately contacted
5  Senior Deputy County Counsel Barbara Stocker on the subject, who replied that
6  "that is the legal question of the year." If Reserves were considered County
7  employees, § 3205 would preclude them from making contributions to Carona's
8  reelection campaign.

9      16.    Senior Deputy County Counsel Barbara Stocker informed Bardzik on
10  September 8, that while she was unsure if the Reserves were considered
11  employees under Government Code §3205, they were considered employees for
12  workers' compensation issues. Stocker advised Bardzik that ignoring this issue
13  could have "huge ramifications" and recommended that all Reserves and the
14  Sheriff "abide by §3205." Stocker informed Bardzik and that she would email him
15  something on the subject. Bardzik was concerned that the Reserves were being
16  placed in a precarious situation and informed his superior officer, Assistant Sheriff
17  Kim Markuson that he intended to inform the Reserves of County Counsel's
18  opinion. Markuson instructed Bardzik to immediately write a memo to all 600+
19  members of the Reserve Division advising them of the situation and to include the
20  information County Counsel was emailing him.

21      17.    On September 8, 2005, as Bardzik was writing the memo to the
22  Reserves as instructed, Markuson called him and told him that the Sheriff had just
23  called from out of state and was "furious" because he had heard what Bardzik had
24  discovered about §3205, what County Counsel had recommended and that Bardzik
25  was going to inform all of the Reserves about the situation. Markuson instructed
26  Bardzik not to tell the Reserves about the possible applicability of Government
27  Code §3205 to them and never to contact County Counsel directly again. Despite

28

6

1  the fact that he had contacted County Counsel on numerous occasions on various
2  subjects before without any problems, Bardzik was told that he had to go through
3  his commanding officer before contacting County Counsel in the future.

4       18.    Frustrated with Carona's failure to clean up the Reserve Department,
5  Carona's failure to lead the department in an ethical and law-abiding fashion, and
6  Carona's campaign compromising the integrity of the Department, Bardzik chose
7  to support Carona's opponent, Lt. Bill Hunt,  in the 2006 election for Orange
8  County Sheriff.   In approximately May or June of 2005, Bardzik's name appeared
9  on a published list of Department members who supported Hunt for Sheriff.
10  Immediately thereafter, Carona initiated a campaign of retaliation against many on
11  the list, including Lt. Bardzik.

12       19.    In July 2005, a Reserve Captain and close friend of Carona, John
13  Hensley, told Bardzik that he had gone out to dinner with Carona the night before
14  and that Carona had told him, "tell Bardzik he should resign." In August 2005,
15  Bardzik finally met with Carona to discuss Carona's demand that he resign.  In
16  this meeting, Carona confirmed that Bardzik should resign and told Bardzik that
17  "the Bill Hunt thing didn't help" and that "you know where you were going in this
18  Department." As Bardzik was leaving the meeting, Carona told him, "remember,
19  Lieutenant, you brought this on."

20       20.    Prior to the public disclosure of Bardzik's support of Carona's
21  political opponent, Bardzik's hard work and dedication had been hailed his
22  supervisors, including Carona.  For example, in Bardzik's annual review for the
23  time period of December 2003 to December 2004, Assistant Sheriff Gannon rated
24  him "Superior," the highest possible score. In the review, Gannon also praised
25  Bardzik for his "excellent job" as Division Commander and wrote that "I have
26  every confidence he will continue his commitment to his present assignment [as
27  Reserve Division Commander]. I consider Jeff an asset to the Department and I

28

7

feel he would make a great candidate for Captain when the opportunity arises." Later when Carona recruited Captain Tom Twellman to be Assistant Sheriff of the Reserve Division, Twellman repeatedly informed Carona that he would consider the position "only if Jeff Bardzik remained in the Reserve Division, as a Captain."

21.    In response to Lt. Bardzik's support of Carona's political opponent, on September 23, 2005, Bardzik was transferred out of the Reserve division to Court Operations in Fullerton, one of the least desirable Lieutenant's assignment in the entire Orange County Sheriff's Department and the furthest from Bardzik's residence, a retaliatory practice in the Orange County Sheriff's Department known as "freeway therapy."

22.    In retaliation for having supported Hunt, Carona made sure that Lt. Bardzik would never be promoted. Prior to Carona learning of Lt. Bardzik's support for Hunt, Lt. Bardzik had been told that he would receive a promotion to Captain. Bardzik applied for Captain's position on February 7, 2005 and in April, he was one of only five Lieutenants invited by Carona to interview for the position. At the time Bardzik was the Commander of the Reserve Division and at the interview, Carona asked, "don't you think the Reserve Division Commander position should be a Captain?"

23.    Assistant Sheriffs Gannon and Galisky reported back to Bardzik about his interview with Carona. Gannon said Bardzik's interview had been "excellent" and should result in his promotion to Captain. Galisky said the same, adding that the Sheriff ranks each candidate against the others in various categories and had ranked Bardzik highest of all the candidates in at least one category. Galisky told Bardzik that the most important category for Carona was "loyalty" and that he had ranked Bardzik first out of all of the candidates in "loyalty." As a result of Bardzik's support for Hunt, he was passed over for that promotion and at least five subsequent promotions for Captain.

8

24. In December 2005, Carona continued his campaign of retaliation against Bardzik by denying him a pay raise that went to every other eligible Lieutenant with the exception of Bill Hunt. Of the seven Lieutenants assigned to Court Operations Division, every one of them received a pay raise except Bardzik. Senior Department members informed Bardzik that he was not getting the raise in retaliation for his previous actions. Moreover, not only was Bardzik denied a promotion to Captain along with the commensurate increase in salary, benefits and retirement, but the retaliatory transfer to Court Operations resulted in a loss of holiday and overtime work for Bardzik. After supporting Hunt, Bardzik received the first negative evaluation of his entire career.

25. Carona's campaign of retaliation also included the fabrication of wrongdoing against Bardzik resulting in Internal Affairs ("IA") investigations. On one occasion, Carona and his staff fabricated the allegation that Bardzik had leaked department information to the Los Angeles Times and ordered an IA investigation of Bardzik. After a year the Department finally found the allegations "not sustained." In response to Bardzik's complaint that the allegations against him were fabricated by Carona and his staff, the Department refused to conduct a complete or adequate investigation.

26. After Carona defeated Hunt, Carona initiated a second retaliatory and unfounded investigation, this time accusing Bardzik of engaging in illegal or unethical campaign activities in the workplace. Despite the fact that there is no substance to the fabricated allegations, the matter remains under investigation by the Department's Internal Affairs division.

27. Carona's retaliation also included preventing Bardzik from obtaining the positions of Dana Point and San Clemente Chief of Police. Bardzik submitted his application for the Dana Point position on November 16, 2006 and was almost immediately advised that Carona had decided that he would not be permitted to

9

**COMPLAINT FOR DAMAGES**

1   apply for the position.  He was given no explanation.

2       28.    Bardzik is qualified for the position and has been advised by high

3   ranking officials that he "would be an excellent fit" for the job.  Indeed, he would

4   have been the best candidate as the City of Dana Point rejected the first four

5   applicants proposed by the Sheriff.  Nonetheless, without explanation or the

6   authority of any law or regulation to support his actions, Carona prevented

7   Bardzik from even interviewing for the position while allowing other less

8   qualified officers to do so.

9       29.    Carona also refused to allow Bardzik to apply for the San Clemente

10  Chief of Police position, a position for which he is also well qualified. The

11  position was posted on January 11, 2007, with applications to be accepted until

12  January 25.  Bardzik submitted his application on January 22 but was informed on

13  January 26, 2007 that he would not be allowed to interview for the job.

14  **FIRST CAUSE OF ACTION**

15  **(VIOLATION OF 42 U.S.C. §1983 (FREE SPEECH))**

16  **(Against Defendant Orange County Sheriff Michael Carona in His Individual**

17  **and Official Capacity  and Does 1-10)**

18      30.    Plaintiff realleges and incorporates by reference each and every

19  allegation contained in paragraphs 1 - 29, as though fully set forth herein.

20      31.    In perpetrating the above described acts and omissions, the County of

21  Orange and the Orange County Sheriff's Department were, at all relevant times

22  herein, California entities and defendant Michael Carona, and Does 1-10 were, at

23  all relevant times herein, its agents/employees.  Thus, defendants' above-described

24  acts and omissions constitute cognizable state action under color of state law.

25      32.    In perpetrating the above-described acts and failures to act, the

26  defendants, and each of them, engaged in a pattern, practice, policy, tradition

27  and/or custom of restraining plaintiffs' free speech on a matter of public concern

28
10

---

**COMPLAINT FOR DAMAGES**

and harassing and retaliating against them because of such speech, in violation of the First Amendment to the United States Constitution and the California Constitution. Because rights under the federal and state Constitutions are federally protected, Defendants also violated plaintiffs' rights under 42 U.S.C. §1983.

33.    At all relevant times herein, there existed within County of Orange and/or the Orange County Sheriff's Department a pattern, policy, practice, tradition, custom, and usage of harassment and retaliation against employees who engage in speech on a matter of public concern, which resulted in a deliberate indifference to plaintiffs' right to free speech.

34.    As more particularly alleged above, Defendants violated Bardzik's 1st Amendment right to free speech by retaliating against him for his support of Sheriff Carona's 2006 election opponent, refusal to support Sheriff Carona in that race.

35.    As the direct and legal result of Defendants' unlawful conduct, Bardzik has suffered and will continue to suffer reasonable, foreseeable and ascertainable damages, including but not limited to, loss of earnings and other employment benefits, emotional distress, anxiety, embarrassment, humiliation, loss of self-esteem, depression, and attorney's fees. Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

## SECOND CAUSE OF THE ACTION
### (VIOLATION OF 42 U.S.C. §1983 (DUE PROCESS))
**(Against Defendant County of Orange Sheriff Michael Carona in His Individual and Official Capacity  and Does 1-10)**

36.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 - 36, as though fully set forth herein.

11

1    37.    In perpetrating the above described acts and omissions, the County of
2  Orange and the Orange County Sheriff's Department were, at all relevant times
3  herein, California entities and defendant Michael Carona, and Does 1-10 were, at
4  all relevant times herein, its agents/employees. Thus, defendants' above-described
5  acts and omissions constitute cognizable state action under color of state law.

6    38.    In perpetrating the above-described acts and failures to act, the
7  defendants, and each of them, engaged in a pattern, practice, policy, tradition
8  and/or custom of failing to provide plaintiffs their due process in violation of the
9  Fifth and Fourteenth Amendments to the United States Constitution. Because
10  rights under the federal Constitution are federally protected, defendants also
11  violated plaintiffs' rights under 42 U.S.C. §1983.

12    39.    At all relevant times herein, there existed within County of Orange
13  and/or the Orange County Sheriff's Department a pattern, policy, practice,
14  tradition, custom, and usage of harassment and retaliation against employees who
15  engage in speech on a matter of public concern, which resulted in a deliberate
16  indifference to plaintiffs' Fifth and Fourteenth Amendment rights.

17    40.    As a result of the acts and failures to act as alleged herein, and as a
18  result of the County's customs, traditions, usages, patterns, practices, and policies,
19  plaintiff was deprived of his constitutional rights to due process, and suffered
20  damages caused thereby as more particularly alleged above.

21    41.    As the direct and legal result of Defendants' unlawful conduct,
22  Bardzik has suffered and will continue to suffer reasonable, foreseeable and
23  ascertainable damages, including but not limited to, loss of earnings and other
24  employment benefits, emotional distress, anxiety, embarrassment, humiliation,
25  loss of self-esteem, depression, and attorney's fees. Plaintiffs are thereby entitled
26  to general and compensatory damages in amounts to be proven at trial.

27

28                                          12

                          **COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**(VIOLATION OF 42 U.S.C. §1983)**

**(MONELL CLAIM - FREE SPEECH)**

**(Against Defendants County of Orange and the Orange County Sheriff's Department)**

42. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 - 42, as though fully set forth herein.

43. In perpetrating the above described acts and omissions, the County of Orange and the Orange County Sheriff's Department were, at all relevant times herein, California entities and defendant Michael Carona, and Does 1-10 were, at all relevant times herein, its agents/employees. Thus, defendants' above-described acts and omissions constitute cognizable state action under color of state law.

44. In perpetrating the above-described acts and failures to act, the defendants, and each of them, engaged in a pattern, practice, policy, tradition and/or custom of restraining plaintiffs' free speech on a matter of public concern and harassing and retaliating against them because of such speech, in violation of the First Amendment to the United States Constitution and the California Constitution. Because rights under the federal and state Constitutions are federally protected, defendants also violated plaintiffs' rights under 42 U.S.C. §1983.

45. At all relevant times herein, there existed within County of Orange and/or the Orange County Sheriff's Department a pattern, policy, practice, tradition, custom, and usage of harassment and retaliation against employees who engage in speech on a matter of public concern, which resulted in a deliberate indifference to plaintiffs' right to free speech.

46. As more particularly alleged above, Defendants violated Bardzik's 1st Amendment right to free speech by retaliating against him for his support of

13

**COMPLAINT FOR DAMAGES**

1  Sheriff Carona's 2006 election opponent, refusal to support Sheriff Carona in that
2  race.

3  47. The acts set forth herein constitute a policy, practice, or custom of
4  ordering, ignoring, encouraging, causing, tolerating, sanctioning, and/or
5  acquiescing in the violation by County personnel of the constitutional rights of
6  employees to free speech on matters of public concern and due process.

7  48. The acts and failures to act as alleged herein also result from a
8  custom, practice or policy of inadequate training in a deliberate indifference to the
9  rights of employees who speak out on matters of public concern, and the injuries
10 suffered by plaintiff as alleged herein were caused by such inadequate training.

11 49. Defendants, and each of them, exhibited deliberate indifference to the
12 violation of plaintiffs' protected speech and due process rights by failing to
13 investigate their complaints or provide them with protection from harassing and
14 retaliatory conduct.

15 50. Defendants, and each of them, are policy-makers for defendant
16 County of Orange. The acts and failures to act as alleged herein were done
17 pursuant to policies and practices instituted by these defendants pursuant to their
18 authority as policy-makers for the County of Orange.

19 51. As the direct and legal result of Defendants' unlawful conduct,
20 Bardzik has suffered and will continue to suffer reasonable, foreseeable and
21 ascertainable damages, including but not limited to, loss of earnings and other
22 employment benefits, emotional distress, anxiety, embarrassment, humiliation,
23 loss of self-esteem, depression, and attorney's fees. Plaintiffs are thereby entitled
24 to general and compensatory damages in amounts to be proven at trial.

25
26
27
28

14

**COMPLAINT FOR DAMAGES**

# FOURTH CAUSE OF ACTION

## (VIOLATION OF 42 U.S.C. §1983)

## (MONELL CLAIM - DUE PROCESS)

**(Against Defendants County of Orange and the Orange County Sheriff's Department)**

52.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 - 52, as though fully set forth herein.

53.     In perpetrating the above described acts and omissions, the County of Orange and the Orange County Sheriff's Department were, at all relevant times herein, California entities and defendant Michael Carona, and Does 1-10 were, at all relevant times herein, its agents/employees.  Thus, defendants' above-described acts and omissions constitute cognizable state action under color of state law.

54.     In perpetrating the above-described acts and failures to act, the defendants, and each of them, engaged in a pattern, practice, policy, tradition and/or custom of failing to provide plaintiff his due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  Because rights under the federal and state Constitutions are federally protected, defendants also violated plaintiffs' rights under 42 U.S.C. §1983.

55.     At all relevant times herein, there existed within County of Orange and/or the Orange County Sheriff's Department a pattern, policy, practice, tradition, custom, and usage of depriving employees of their Fifth and Fourteenth Amendment rights to due process.

56.     As more particularly alleged above, Defendants violated Bardzik's Fifth and Fourteenth Amendment rights to due process by retaliating against him for his support of Sheriff Carona's 2006 election opponent, refusal to support Sheriff Carona in that race.

57.     The acts set forth herein constitute a policy, practice, or custom of

15

1  ordering, ignoring, encouraging, causing, tolerating, sanctioning, and/or

2  acquiescing in the violation by City personnel of the constitutional rights of due

3  process.

4      58.    The acts and failures to act as alleged herein also result from a

5  custom, practice or policy of inadequate training in a deliberate indifference to the

6  rights of employees who speak out on matters of public concern, and the injuries

7  suffered by plaintiff as alleged herein were caused by such inadequate training.

8      59.    Defendants, and each of them, exhibited deliberate indifference to the

9  violation of plaintiffs' protected speech and due process rights by failing to

10  investigate their complaints or provide them with protection from harassing and

11  retaliatory conduct.

12      60.    Defendants, and each of them, are policy-makers for defendant

13  County of Orange.  The acts and failures to act as alleged herein were done

14  pursuant to policies and practices instituted by these defendants pursuant to their

15  authority as policy-makers for the County of Orange.

16      61.    As the direct and legal result of Defendants' unlawful conduct,

17  Bardzik has suffered and will continue to suffer reasonable, foreseeable and

18  ascertainable damages, including but not limited to, loss of earnings and other

19  employment benefits, emotional distress, anxiety, embarrassment, humiliation,

20  loss of self-esteem, depression, and attorney's fees.  Plaintiffs are thereby entitled

21  to general and compensatory damages in amounts to be proven at trial.

22

23                      **PRAYER FOR RELIEF**

24      WHEREFORE, Plaintiff requests the following judgment and relief:

25      1.    For compensatory damages including economic losses, lost wages,

26             vacation and retirement benefits, medical bills, mental and emotional

27             distress, and other special and general damages according to proof but

28                        16

1    in excess of the jurisdictional threshold of this Court;

2        2.   For an award of interest, including pre-judgment interest, at the legal

3    rate;

4        3.   For reasonable attorneys' fees pursuant to 42 U.S.C. §1988,

5             California Code of Civil Procedure §1021.5, and any other

6             appropriate statutes;

7        4.   For punitive damages against the individual defendant;

8        5.   For costs of suit incurred herein;

9        6.   For a jury trial on all issues so triable;

10       7.   For injunctive relief; and

11       8.   For such other and further relief as this Court may deem just and

12   proper.

13

14

15                   **JURY TRIAL DEMAND**

16   Plaintiff hereby demands a jury trial on all issues so triable.

17

18   DATED: February 6, 2007         Respectfully submitted,

19                   Law Offices of Randy Renick

20

21                   By

22                   Randy Renick

23                   Attorney for Plaintiff
                     Jeff Bardzik

24

25

26

27

28                  17

**COMPLAINT FOR DAMAGES**